Chief Justice'Robertson,
delivered the opinion of the court.
This appeal is prosecuted by Calloway’s heirs and others, to reverse a judgment for execution obtained against them by Eubank and son. The ap-pellees had obtained a judgment on a promissory note against Edmund Calloway and John B. Clark, which they, with their surety, John G. Reynolds, replevied. After Calloway’s death, and after the expiration of more than a year and a day from the time the replevin bopd became due, the appellees proceeded by scire facias against the survivors and against the heirs and personal representatives of Calloway, to revive the judgment of law on the replevin bond.
Two successive writs were directed to the sheriff of Clarke county, on each of which he returned that none of the defendants to the writ were inhabitants of his county, and that none of them had any thing “whereby they or either of them could be warned.”
At the appearance term of the second writ, some of the heirs being infants, a guardian ad litem was appointed for them by the court, and who at the next term tiled a demurrer and other pleas, all of which he withdrew at the succeeding term, when judgment for execution was rendered, by default, against all the persons against whom the writs issued.
In England, a joint scire fa-mahnained •against the survivorand deceased Co-S obligor. The judgment to tíolfagalnst the goods and land of the a^ainsUand descended to the heir.
In the assignment of errors, several points are pte» sented, some of which we consider so well settled as 1° render any particular notice of them unnecessary. The only questions which we deem worthy of consideration, are the following. _
1st. Can a joint sdre facias be sustained against the survivors and the representatives of the deceased co-obligor?
2nd. Can a joint sdre facias be sustained against the heirs and personal representatives of Calloway?
3rd. Did the returns of the sheriff authorize a judgment without a full appearance ?
1st. In the case of Johnson’s executors vs. Deason, III Bibb, 259, it was decided that, as a judgment against several survivors, against the survivor or survivors on :the death of some of them, the remedy by execution, action of debt or sdre facias also survived, and therefore, that-a joint scire facias against the survivors and representatives of the deceased could not be sustained» In II Saunders, 72, and on II Tidd’s pra. 1033, it is stated that a joint scire facias may be maintained against the survivor and the heir of his deceased co-ob» ligor in the judgment, to have execution against the goods and land of the survivor and against the land descended to the heir. In II Tidds. pra. 1028, it is laid down that a sdre facia* would lie against the survivor alone reciting the death.
These authorities seem to present the true doctrine in England.
Before the statute “quia cmptorisf the tenant was not allowed to sell-more than half his fee; consequently the statute of West’m. 2, which authorised the creditor to extend the land of his debtor by eligit (as it was passed before that of “quia emptorisf) permitted, an ‘“extent” for only a moiety of the -land; as land was not liable to execution at common law, therefore, the charge on a judgment being personal alone, survived against the survivor. And since the statute of West’m. 2, it has never been considered that a judgment survives as to the reality. The statute not having altered the common law in this respect; III Coke, 14, III Ba. Abr. 699.
*281 Hence, the reason will at once be perceived, why á scire facias was permitted for reviving against the realty of the survivor, and of the heir of the deceased And the reason also, is obvious, why, as the obligation--survived as to the personalty, a scire facias could not be maintained against the survivor and the personal representative of the deceased.
Therefore, it would seem to be not only a reasonable but a necessary consequence, that, in England, a scire facias to revive a judgment, would lie only against the survivor, unless the creditor desired to subject the realty, and that, then it would be good against the survivor and the heir, to revive against the goods and land of the former and against the land alone of the latter; and to show that this was the law see, in addition to the authorities which have been died and the numerous cases to which they refer, Ba. Abr. 698.
Tidd says,-“this {scire facias) being a judicial writ must pursue the judgment, and therefore, if a joint judgment be obtained against two, the scire facias must issue against both; II Tidd’s Pra. 1908. The reason assigned, is, that otherwise, there would be a variance in the judgment. This is a very satisfactory and an unanswerable reason. But it does not prove that if one joint obligor die after judgment, the scire facias must issue against the survivor and the representative of the deceased.
If debt were brought on a judgment against two, it should be brought against both, but if one had died, it could be maintained against the survivor only. In such a case the declaration should show the death, so as tó 'prevent a variance; and so should a scire facias; see III Ba. Abr. 698, and marginal note.
The doctrine in II Tidd, 1008, therefore, does not apply to a scire jadas wdien some of the defendants to the judgment had died.
In II Salk. 598, there is a case which is more appli•cable. There it was decided that a scire facias to revive, should be issued against all the parties to the judgment, whether living or dead.
On the authority of this case in Salk, and of the general principle laid down in Tidd, 1008, our prede *282 cessors have, in three cases subsequent to that in III Bibb, decided virtually, that a scire facias to revive,not only may, but must go against the survivors and the representatives of the dead.
Scire facias must conform to the judgment.
Altho’joint action of debt cannot be maintained against surviving obli-gor and the representatives of the decedent; yet a joint scire facias may be.
The only reason suggested, is, that it must conform to the judgment; see Mitchell’s heirs vs Smith, I Lit. Repts. 243; Holder’s heirs vs. commonwealth, III Marsh. 410; and Grays adm’r. vs. McDowell, V Monroe, 501.
The case in V Monroe, is directly in point, and expressly overrules that of Johnson vs. Deason.
These conflicting authorities cannot be entirely reconciled. When all the cases are investigated, it will be seen that the question now involved, may not be considered as “res adjudicata.”
But the law must be settled and such a rule must be fixed as can be deduced from the principles of all the cases when applied to the statutory law of this state.
And as it is not so important, what the rule on this subject shall be, as it is, that it should be fixed and uniform, and as it is not yet clearly and fully settled, we feel authorized to establish that which, on a survey of the whole subject, we consider most reasonable and consistent.
By an act of 1796, (I Dig. 267,) the common law doctrine of personal survivorship in joint obligations was abolished. Since that act, the death of either of the joint obligors renders the obligation several.
Hence, a joint action of debt cannot be maintained against the surviving, and the representatives of the deceased obligor; but maybe maintained against either the one or the other; and consequently, the case of Johnson vs. Deason, seemed to be sustained by analogy. But it should be recollected, that a scire facias, although it is considered “a suit,” is a judicial writ, and that it is governed by some rules, peculiar to itself. For example.
1st. A joint scire futías may be maintained on a se\-eral recognizance; Madison, et. al. vs. Commonwealth, II Marsh. 132; II Saunders, 72; 11 Institutes, 395.
2nd. The authorities before cited in II Tidd and If Saunders and others, which might be referred to, show *283 that a joint scire facias against the survivor and the heir of the deceased joint obligor, might be sustained, in order to have execution against the land, the charge .on which, did not survive. But an action of debt on-■ — — the judgment could not have been maintained jointly against both, because the personal obligation and the personal remedy survived.
Execution may issue slmXn^ob-bg°r in a icpU^nbond, without a scire facias, but not eftate of decedent,
It results, therefore, that there is not a perfect analogy between a suit by writ of scire facias and a suit by an ordinary writ. If there had been such analogy in all respects, then the argument of the court on the case in III Bibb, would have been unanswerable.
For, as a plaintiff must sue either the survivor or the representatives of the dead co-obligor in debt, and cannot sue them jointly, it would follow, that he might proceed against either, but could not sue both by scire facias. But as it is shown that when there was no sur-vivorship a scire facias would he good against the heir and the surviving obligor, consequently this mode of proceeding is an exception from the general rule; and therefore, as now, in this state, survivorship is abolished; a joint scire facias may be sustained against the survivor and the representatives of the deceased co-obligor.
And hence it appears that the analogical reasoning in Johnson vs. Deason,is inconclusive, because, in consequence of the act of 1796, abolishing survivorships, the assumed analogy fails. And, therefore, it would seem to result that in such a case as this, a joint scire facias may he prosecuted.
But it is not a necessary corollary from the foregoing conclusion that in such a case, the scire facias must be joint.
An execution may issue against the survivor without a scire facias; but it cannot go against the estate of the deceased joint obligor without a revivor.
His estate, both real and personal, is now hound as his personal estate, was hound at common law. By the common law, the plaintiff could not have execution against the personal estate of the surviving debtor and against the land of the heir of the deceased debtor, without a revivor by scire facias; consequently if he wished to proceed against both, the realty and person *284 ally, it was necessary to issue his scire, facias against flic survivor and the heir. If he conld make his debt oul °f the personalty of the survivor, it was not necessary to revive against him, II Tidds Pra. 1029.
Statute, of Westminster, 2, authorized an elegit against the goods and land. But if one defendant died-, after judgment an elegit could not issue on the judgment "without a scire jactas.
In this state an execution may not only issue against, the survivor without scire, facias, but the debt may be made out of his estate,,real as well as personal. • There is, therefore, no necessity for a revivor against the survivor, for any purpose, as there was in England, in order to subject the realty.
The statute, of Westm. 2, authorized an degit against the goods and land. If one defendant died after judgment, an elegit could not issue on the judgment without a sdre facias, for two reasons.
1st. The statute of Westm. 2, was construed .to charge the lands of all the defendants equally, and it was therefore required that the lands of all, should he extended, or in other words, that “execution must he equality made,” II Saunders, 51, 4. a.; consequently the debt could not be made out of the land of one alone, if any of the other joint; obligors bad land; and lienee, if a scire, facias issued against one only, he might object that the heir of his deceased co-obligor in the judg - ment had land, without subjecting which the plaintiti had no right to extend that of the defendant in the scire facias.
2nd. As the elegit went against the goods and land, and as it was necessary that the goods should he extended before the land could be, if a scire facias against the heir alone, had been allowed, he might be compelled to pay the whole debt, by giving up bis land, when the surviving obligor had personal estate sufli dent to pay the debt, and when the judgment as to the personalty had survived against him.
For these reasons, the creditor could not revive a, judgment against the heir, unless he united the surviving obligor in the scire, fictas.
But here, tbc creditor may make bis whole jndgment out of the estate, real or personal of the surviving debtor, or out of that of the deceased co-obligor, if he elect to proceed against the former.
The whole judgment may be made out of the whole estate of the survivor, without any revivor. This will *285 not be controverted. In England the land of the survivor cotdd not be extended alone, if the heirs of the deceased co-obligors had land.
The whole debt could be made out of the survivor if he had personal property suflicient. Here the whole debt may be made out of him, if his personal and real estate united, be sufficient.
Since the abolition of survivorship in joint obligations, the death of a joint obligor, does not, as it did in England, release his representatives, from an action by the obligee; and, therefore, as they remain legally bound, and have an interest which may be affected by the judgment on the scire facias, it might be just and reasonable, that they should be made parties, so that they may plead for themselves. This does not appear to be the reason for requiring a joinder in the scire facias in England, in order to subject the land; the reason assigned is, not that the heir has an interest, but because an drgit cannot issue against the survivor without a revivor against the heir. But, in England, a scire fadas couldhiot issue against the tere-ienanl, with J out joining the heir, because the heir might, if sued, shew that he had paid the debt. The reason of this doctrine does not, necessarily, apply to a case like the present, because the terc-tenant was no party to the judgment. But there is some analogy between the cases. These considerations, combined with the act subjecting lands to execution, and with that, abolishing survivor-ship in joint obligations, may constitute a solid foundation for the doctrine in Y Monroe. But the opinion could not be maintained on common law principles, without the act of 1799.
If there had been no decision by this sourt, on the subject, a survey of all the authorities and analogies, which can affect the case, might incline to an opinion which would not be rcsi rictive or exclusive, and that is, that, in such a caso as this, a scire fadas might be maintained, either against the survivor or the representatives of the deceased co-obligor, or against them all, jointly.
But it is not more important what the law is, than that it should be settled and known; and, therefore, as the question involved is one of practice rather than of principle, and as the decision in Y Monroe, may be *286 maintained by some of the considerations which have been suggested, we are disposed to acquiesce in its authority, and recognize it as the’ law of the state. Wherefore, a scire facias, in such a case as this, not only may, but must, be joint against the surviving and the representatives of the deceased co-obligors.
Scire facias to revive a reple-vin bond must he joint against the surviving, and representatives of the deceased co-obligors.
Joint scire facias may be" maintained against the heirs and personal representative of a deceased co-obligor in re-plevin bond.
But when a scire facias goes against the heir, it must include, also, the personal representative. This was not necessary or allowable in England; because, as by the death of one co-obligor, the judgment survived against the survivor, as to the personalty, the personal representative of the deceased obligor, was not liable. But here, there being no such distinction between the personalty and realty, and the personal representative being liable, he should be included in the scire facias, lest, otherwise, the land might be sold, when the primary fund would be sufficient to satisfy the judgment. In England, when a sole obligor died, the judgment could not be revived against the realty alone; it was necessary to revive against the personal representative; sec II Sanders, 72; and Tidd’s Pra., 939,
2d. It was not improper to join the heirs with the personal representatives; although it was not necessary to include the heirs; the plaintiffs had a right to do so. The second section of an act of 1792, (1 Dig., 652,) provides that “the same actions which will lie against executors and administrators, may be brought jointly against them and the heirs and devisees of the dead person, or both.
Á scire facias is an action, and therefore, the act of 1792 applies to it.
An act of 1819, (first and second sections,) authorises a suit to be brought against heirs or devisees or both, after a judgment had been obtained against the personal representative, on a contract on which a joint action might, in the first instance, have been maintained against them all; and also, “i/” no person administer on the goods and chattels of the deceased, for the space of one year, after his or her death.”
The fourth section of the same act then declares that, “judgments maybe revived against the executor or administrator, and then against the heirs and devisees, or against the latter only, when there is no executor or ad *287 ministrator, according to the above rules in relation to actions, on the contracts of the deceased.” (I Dig., 537.)
Judgment ^aJ * executor or 8 administrator Jb^ hfirsand de-vi«ees; or it ™aJ b? r®vlT: pf them m the ®a“eP10cee ' s
Two returns ?no inhabitant of my county’ will pot au-uXmentona wire facias.
Sheriff cannot return “not found,” on a unle^defen-dant reside in bis county.
From this last section, the counsel for the appellants argue, that a judgment must first he revived against the personal representative of the deceased defendant, before there can he a revivor against his heirs or devisees; and that a joint scire facias will not lie against them. The l^asis of this argument will not authorize the conclusion attempted to he drawn from it. The act of 1819 does not repeal that of 1792. It only provides for a different case not provided for by the act of 1792. Before the act of 1819, a judgment could not have been obtained against an heir or devisee, in the manner authorized by that act. Either an heir or devisee, or both, might have been sued jointly with the personal representative; but not otherwise. Therefore, the act of 1819, was necessary, to justify separate suits and suits against heirs and devisees, when there should he no personal representative within a year after the death of the deceased obligor.
Now, a joint suit may he brought against the heirs, devisees, and personal representatives; or a separate suit may he brought against the representative alone; or against the heirs or devisees, in certain contingencies, A judgment may he revived against the administrator or executor, and then against the heirs and devisees; or it may he revived in the first instance against all of them, in the same proceeding. Wherefore, there is no solidity in the second objection.
3d. This objection must be sustained. According to our construction of the record, the adults, against whom the writs were issued, did not appear.. The returns did not authorize a judgment by default. They are “nihilf according to the common law-. “Nihil,” means technically, that the party had nothing whereby he could be warned. And this is the return on each of the two writs in this case. At common law, two such returns might have authorized judgment. . But the common law has, in this respect, been changed by an act of 1801, (I Dig , 257.)
The seventh section of this act, requires the scire fa-cías to issue to the county in which the defendant shall reside, if he be a resident of the commonwealth, unless he can he found in the county in which the writ is *288 pending. And does not authorize a judgment, unless two writs be returned “not found." The sheriff cannot make such a return, unless the defendant reside in his county.
Two returns ‘ on wriís^of* ’ scire facias d'i-reeled to . dej^dantTB-6, sides, will alone author- • by default3;11”" unless it bé fend ant is no inhabitant of the state.
Allan and Simpson, for plaintiffs; Hanson, for defendant*
In this case, the sheriffs returned, that none of the persons against whom the writs issued, were inhabitants 0f his county. He did not return, that they were not inhabitants of the state. As, thciefore, they did not reside in Clarke county, and are not shown to have been no inhabitants of the commonwealth, writs ought to have been directed to the county of their residence; and thbn, and not till then, two returns of “not found,” woeld have authorized the judgment by default, J J
As, therefore, there was no service in this case, nor returns equivalent to service, and as the adults did not enter their appearance, the judgment of the circuit court must he reversed, and the cause remanded for further proceedings consistent with this opinion.